# No. 24-2882

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

EPIC SYSTEMS CORPORATION,
*Plaintiff / Appellant,*

v.

TATA CONSULTANCY SERVICES LIMITED & TATA AMERICA
INTERNATIONAL CORPORATION D/B/A TCS AMERICA,
*Defendants / Appellees.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin, No. 14-cv-748 (Conley, J.)

## RESPONSE BRIEF FOR TATA CONSULTANCY SERVICES LIMITED AND TATA AMERICA INTERNATIONAL CORPORATION

Christopher M. Egleson
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1
Palo Alto, CA 94304
(650) 565-7000

Robert N. Hochman
*Counsel of Record*
Neil H. Conrad
Katherine Surma
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Counsel for Tata Consultancy Services Limited
and Tata America International Corporation*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2882

Short Caption: Epic Systems Corporation v. Tata Consultancy Services Limited et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tata Consultancy Services Limited ("TCS")

Tata America International Corporation (d/b/a TCS America) ("TAIC")

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sidley Austin LLP, Kelley Drye & Warren, and Stafford Rosenbaum LLP

(3)      If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

TAIC is a wholly-owned sub of TCS. A majority of TCS's stock is owned by Tata Sons Private Limited (TSPL

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly traded company owns 10% or more of TCS's stock. TCS is publicly traded. TSPL is not.

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Robert N. Hochman          Date: March 14, 2025

Attorney's Printed Name: Robert N. Hochman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑    **No** ☐

Address: Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603

Phone Number: (312) 853-2936          Fax Number: (312) 853-7036

E-Mail Address: rhochman@sidley.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2882

Short Caption: Epic Systems Corporation v. Tata Consultancy Services Limited et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tata Consultancy Services Limited ("TCS")

Tata America International Corporation (d/b/a TCS America) ("TAIC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sidley Austin LLP, Kelley Drye & Warren, and Stafford Rosenbaum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        TAIC is a wholly-owned sub of TCS. A majority of TCS's stock is owned by Tata Sons Private Limited (TSPL

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded company owns 10% or more of TCS's stock. TCS is publicly traded. TSPL is not.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Christopher M. Egleson    Date: March 14, 2025

Attorney's Printed Name: Christopher M. Egleson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [ ] No [✔]

Address: Sidley Austin LLP, 1001 Page Mill Road, Building 1, Palo Alto, CA 94304

Phone Number: (650) 565-7108    Fax Number: (650) 565-7100

E-Mail Address: cegleson@sidley.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2882

Short Caption: Epic Systems Corporation v. Tata Consultancy Services Limited et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Tata Consultancy Services Limited ("TCS")

   Tata America International Corporation (d/b/a TCS America) ("TAIC")

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Sidley Austin LLP, Kelley Drye & Warren, and Stafford Rosenbaum LLP

(3)   If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

      TAIC is a wholly-owned sub of TCS. A majority of TCS's stock is owned by Tata Sons Private Limited (TSPL

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      No publicly traded company owns 10% or more of TCS's stock. TCS is publicly traded. TSPL is not.

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: s/ Neil H. Conrad            Date:  March 14, 2025

Attorney's Printed Name:  Neil H. Conrad

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]   **No** [✔]

Address:  Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603

Phone Number: (312) 853-7579            Fax Number:  (312) 853-7036

E-Mail Address: nconrad@sidley.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2882

Short Caption: Epic Systems Corporation v. Tata Consultancy Services Limited et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐          **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tata Consultancy Services Limited ("TCS")

Tata America International Corporation (d/b/a TCS America) ("TAIC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Sidley Austin LLP, Kelley Drye & Warren, and Stafford Rosenbaum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

        TAIC is a wholly-owned sub of TCS. A majority of TCS's stock is owned by Tata Sons Private Limited (TSPL

    ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded company owns 10% or more of TCS's stock. TCS is publicly traded. TSPL is not.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Katherine Surma          Date:  March 14, 2025

Attorney's Printed Name:  Katherine Surma

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address:  Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603

Phone Number: (312) 853-7000          Fax Number:  (312) 853-7036

E-Mail Address: ksurma@sidley.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT .......................................................... 1

INTRODUCTION .................................................................................. 1

STATEMENT OF THE ISSUE ............................................................ 3

STATEMENT OF THE CASE ............................................................. 4

STANDARD OF REVIEW ................................................................... 9

SUMMARY OF ARGUMENT ............................................................. 9

ARGUMENT ........................................................................................ 10

I.   POST-JUDGMENT INTEREST RUNS FROM THE ENTRY
     OF THE JUDGMENT AUTHORITATIVELY DEFINING
     THE AMOUNT OF DAMAGES ON WHICH INTEREST IS
     OWED. ........................................................................................ 10

     A.   The Plain Text of 28 U.S.C. § 1961(a) and This Court's
          Precedents Support Calculating Interest From the Date
          of Judgment Authoritatively Defining the Sum Subject
          to Execution. ...................................................................... 11

     B.   *Kaiser* Supports This Reading. ........................................ 17

     C.   The Statutory Purpose of Section 1961(a) Supports This
          Reading. .............................................................................. 21

II.  THE DISTRICT COURT CORRECTLY HELD THAT POST-
     JUDGMENT INTEREST SHOULD NOT RUN FROM THE
     SINCE-VACATED ORIGINAL JUDGMENT. ............................. 24

     A.   *Harris* and *Divane II* Squarely Support the District
          Court's Decision. ................................................................ 25

     B.   Epic's Authority Is Inapposite. ......................................... 28

CONCLUSION ..................................................................................... 38

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABS Global, Inc. v. Inguran, LLC,*
  2020 WL 2405380 (W.D. Wis. May 12, 2020) .................................... 31

*Bonjorno v. Kaiser Aluminum & Chem. Corp.,*
  518 F. Supp. 102 (E.D. Pa. 1981) ........................................ 18

*In re Burlington N., Inc. Emp. Practices Litig.,*
  810 F.2d 601 (7th Cir. 1986) .................................... 12, 14, 15

*Coal Res., Inc. v. Gulf & W. Indus., Inc.,*
  954 F.2d 1263 (6th Cir. 1992) ........................................... 35

*Dakota, Minn. & E. R.R. Corp. v. Ingram Barge Co.,*
  2020 WL 1663413 (N.D. Iowa Apr. 3, 2020) ....................................... 32

*Divane v. Krull Elec. Co.,*
  200 F.3d 1020 (7th Cir. 1999) ........................................... 27

*Divane v. Krull Electric Co.,*
  319 F.3d 307 (7th Cir. 2003) ........................................ *passim*

*Dunn v. HOVIC,*
  13 F.3d 58 (3d Cir. 1993) ............................................. 34, 35

*Eaves v. Cnty. of Cape May,*
  239 F.3d 527 (3d Cir. 2001) ..................................... 11, 13, 15

*EEOC v. Gurnee Inns, Inc.,*
  956 F.2d 146 (7th Cir. 1992) ............................. 12, 13, 28, 37

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,*
  2023 WL 4542011 (7th Cir. July 14, 2023) .................................... 7, 24

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.,*
  980 F.3d 1117 (7th Cir. 2020) ..................................... *passim*

*Exxon Valdez v. Exxon Mobil*,
  568 F.3d 1077 (9th Cir. 2009)..........................28, 29, 30, 32

*FDIC v. Rocket Oil Co.*,
  865 F.2d 1158 (10th Cir. 1989)................................ 36

*Harper v. BP Exploration & Oil, Inc.*,
  3 F. App'x 204 (6th Cir. 2001) ............................... 13

*Harris v. Chicago Great Western Railway Co.*,
  197 F.2d 829 (7th Cir. 1952).......................... *passim*

*Houben v. Telular Corp.*,
  309 F.3d 1028 (7th Cir. 2002)............................... 23

*Hysell v. Iowa Public Serv. Co.*,
  559 F.2d 468 (8th Cir. 1977)................................ 32

*Johansen v. Combustion Engineering, Inc.*,
  170 F.3d 1320 (11th Cir. 1999)........................33, 34

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*,
  494 U.S. 827 (1990).................................... *passim*

*Kelly v. Secretary of Department of Housing & Urban
  Development*,
  97 F.3d 118 (6th Cir. 1996)................................. 20

*Kneeland v. American Loan & Trust Co.*,
  138 U.S. 509 (1891).....................................36, 37

*Lewis v. Whelan*,
  99 F.3d 542 (2d Cir. 1996) ................................. 31

*Merit Insurance Co. v. Leatherby Insurance Co.*,
  728 F.2d 943 (7th Cir. 1984).............................23, 24

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am.
  Express, Inc.*,
  962 F.2d 1470 (10th Cir. 1992).............................. 13

iv

*Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.,*
665 F.3d 1091 (9th Cir. 2011)............................................................. 13

*N. Nat. Gas Co. v. Hegler,*
818 F.2d 730 (10th Cir. 1987)............................................................. 35

*Radford Tr. v. First Unum Life Ins. Co. of Am.,*
491 F.3d 21 (1st Cir. 2007) ...................................................................... 9

*Saccameno v. U.S. Bank Nat'l Ass'n,*
943 F.3d 1071 (7th Cir. 2019)............................................... 6, 30, 34

*Sterling Nat'l Bank v. Block,*
2019 WL 5085715 (N.D. Ill. Oct. 10, 2019), *rev'd on other grounds*, 984 F.3d 1210 (7th Cir. 2021) ............................................. 13

*Tinsley v. Sea-Land Corp.,*
979 F.2d 1382 (9th Cir. 1992)............................................................. 35

*Transmatic, Inc. v. Gulton Indus., Inc.,*
180 F.3d 1343 (Fed. Cir. 1999) ........................................................... 31

*White v. United Airlines, Inc.,*
987 F.3d 616 (7th Cir. 2021)................................................................... 9

## Statute

28 U.S.C. § 1961............................................................................. *passim*

## Other Authority

Federal Rule of Appellate Procedure 37(b) ..................................... 28, 29

## JURISDICTIONAL STATEMENT

Appellant Epic Systems Corporation's jurisdictional statement is complete and correct.

## INTRODUCTION

This appeal presents a single question: Whether post-judgment interest on Epic's award of punitive damages should be calculated using the date of the original judgment in 2017, which was vacated by this Court in *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020) (as amended) ("*Epic I*"), or the date of the subsequent judgment in 2022, which was entered after the district court considered punitive damages anew under the guidance provided by this Court in *Epic I*. The district court, eminently familiar with the procedural posture of this case and understanding what it did when it considered punitive damages after the *Epic I* remand, held that post-judgment interest should run from the date of the subsequent judgment. That conclusion was correct, and it is supported by the plain text of the post-judgment interest statute and the relevant Supreme Court and Seventh Circuit authority.

Under Section 1961, post-judgment interest "shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). The

judgment awarding Epic punitive damages of $140 million—the judgment on which it actually seeks an interest payment—is the 2022 judgment. The original judgment from 2017 awarding Epic $280 million in punitive damages was vacated. That vacated judgment cannot be the "judgment" under the plain language of the statute. The date of the 2022 judgment should therefore be used to calculate post-judgment interest.

Epic's contrary view—that the Court use a vacated judgment setting an improper punitive damages award and notwithstanding a remand for the district court to consider punitive damages anew—cannot be squared with the natural reading of the statute or Supreme Court and Seventh Circuit precedent. Epic overreads cases from other circuits where the court used the date of an earlier judgment to calculate post-judgment interest to stand for the broad, textually indefensible rule Epic urges here. None of those cases dealt with the situation presented here, where (i) the relevant portion of the judgment was vacated by a court of appeals because the facts and circumstances did not support the award under the correct legal principles, and (ii) the case was remanded for fresh consideration by the district court and

application of those principles in the first instance. Here, it was only after the trial court's ruling on remand that there was a judgment with an authoritatively determined sum owed to Epic. To the extent any of those cases includes language that suggests courts should deviate from the plain text of the statute by using the date of the earlier judgment to calculate post-judgment interest in this situation, they should not be followed.

As the district court correctly found, it was not until the entry of the subsequent judgment in 2022 that Epic's entitlement to $140 million in punitive damages was meaningfully ascertained. Thus, post-judgment interest should be calculated using the date of the subsequent judgment. This Court should affirm.

## STATEMENT OF THE ISSUE

Whether under 28 U.S.C. § 1961(a), post-judgment interest on a punitive damages award accrues from the date of entry of the judgment authoritatively defining the amount of punitive damages on which interest is owed, and not from the date of an earlier judgment vacated on constitutional grounds and where the case was remanded for fresh consideration by the district court on the issue of punitive damages.

**STATEMENT OF THE CASE**

The jury in this case initially awarded Epic $240 million in compensatory damages and $700 million in punitive damages. R. 976 at 1.[1] After trial, the district court reduced the compensatory damages award to $140 million, holding that a $100 million portion of the compensatory damages award was not supported by sufficient evidence. *Id.* at 11, 25. It also reduced the punitive damages award to $280 million under a Wisconsin statute that caps punitive damages at two times compensatory damages. *Id.* at 17, 25. The district court entered a final judgment on October 3, 2017. R. 978; A12–17. TCS appealed the remaining compensatory and punitive damages awards, and Epic cross-appealed this Court's vacatur of the $100 million compensatory damages award.

This Court affirmed the $140 million compensatory damages award and affirmed the district court's vacatur of the additional $100 million compensatory damages award, but vacated the $280 million punitive damages award. *Epic Sys. Corp. v. Tata Consultancy Servs.*

---

[1] "R." citations are to district court docket entries. The page numbers correspond to the page number in the ECF stamp at the top of the page.

*Ltd.*, 980 F.3d 1117 (7th Cir. 2020) (as amended) ("*Epic I*").[2] This Court concluded that the $280 million punitive damages award exceeded federal due process limits because "TCS's conduct, while reprehensible, was not egregious," and TCS was already subject to a substantial compensatory damages award. *Id.* at 1144. This Court observed that TCS's conduct did not involve a risk of physical harm—to Epic or anyone else—and that only economic harm was at issue. *Id.* at 1141. And, as this Court explained, the economic harm Epic actually suffered was not substantial: "if Epic suffered quantifiable economic harm, that harm is significantly smaller than $140 million." *Id.* at 1143. Under these circumstances, the Court determined that a 1:1 ratio of compensatory to punitive damages is the most federal due process would allow. *Id.* at 1144–45.

Importantly, this Court did not order the district court to enter a punitive damages award of $140 million. Instead, it remanded for the district court to "amend its judgment and reduce punitive damages to, *at most*, $140 million." *Id.* at 1145 (emphasis added). That followed from

---

[2] TCS paid the compensatory damages portion of the judgment, along with costs and post-judgment interest, following this decision. *See* R. 1057 at 2, ¶ 3.

this Court's ruling, which had recognized that "the Constitution is not the most relevant limit to a federal court when assessing punitive damages, as it comes into play 'only after the assessment has been tested against statutory and common-law principles.'" *Id.* at 1140 (quoting *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019)). This Court remanded the case for the district court to apply those non-constitutional principles in the first instance and determine an appropriate amount of punitive damages anew, directing the district court that "the precise award must be based on the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.* at 1144 (citation and internal quotation marks omitted).

As the district court recognized after the case was remanded, this Court "plainly charged [the district court] *to exercise its discretion* on remand and enter an award up to a constitutional maximum of $140 million in light of the record in the case as a whole." R. 1045 at 2 (emphasis added). On remand, the parties briefed the issue of punitive damages, and Epic introduced new evidence, offering evidence from after the trial that Epic claimed supported its request for punitive damages. *See* R. 1041 at 18–19; R. 1041-1 (Exhibit A); R. 1041-2

(Exhibit B). After reviewing and summarizing its view of the full record, the district "conclude[d] that the facts and circumstances of this case as a whole justify an award of $140 million in punitive damages." R. 1045 at 7. It entered a new judgment on July 12, 2022. R. 1046; A10–12.

TCS appealed, arguing that $140 million was excessive, and this Court affirmed. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 2023 WL 4542011 (7th Cir. July 14, 2023) ("*Epic II*"). Applying an abuse of discretion standard to non-constitutional issues, *id.* at *1, this Court summarized the district court's review of the record and held that the district court "properly justified the $140 million punitive damages award" issued by the district court on remand. *Id.* at *1–2.[3]

Epic subsequently moved for an award of post-judgment interest under 28 U.S.C. § 1961(a). R. 1057. It argued that post-judgment interest on punitive damages began to accrue on October 3, 2017, the date of the district court's initial judgment awarding $280 million in punitive damages, which was vacated in *Epic I*. TCS opposed the motion, arguing that post-judgment interest began to accrue on July 12,

_____

[3] After this decision, TCS paid the punitive damages portion of the judgment as well. *See* R. 1063 at 4, ¶ 5.

2022, the date the district court entered the judgment after the remand for fresh consideration of the appropriate amount of punitive damages. R. 1062.

The district court ruled in TCS's favor, concluding that post-judgment interest ran from the 2022 judgment. A2. It reasoned that the case bore substantial similarity to this Court's decisions in *Harris v. Chicago Great Western Railway Co.*, 197 F.2d 829 (7th Cir. 1952), where neither the amount of the fee award due nor the date of the obligation had been authoritatively defined until an appeal, and *Divane v. Krull Electric Co.* ("*Divane II*"), 319 F.3d 307 (7th Cir. 2003), where the original judgment had not been supported by evidence of the specific damages to which the prevailing party was entitled. A7–8. Because the district court here had been charged with applying this Court's guidance from *Epic I* while considering punitive damages anew, it concluded that "the punitive damage[s] award was not yet ascertained in a meaningful way until determined by this court's entry of final judgment on July 12, 2022." A2; *see also* A8 ("the actual amount of the punitive damages award was … not 'meaningfully ascertainable' until this court complied with the Seventh Circuit's instruction on remand").

Epic now appeals.

## STANDARD OF REVIEW

This Court reviews de novo the district court's determination of
the post-judgment interest accrual date under 28 U.S.C. § 1961, as that
issue presents a legal question of statutory interpretation. *See White v.
United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021); *Radford Tr. v.
First Unum Life Ins. Co. of Am.*, 491 F.3d 21, 24 (1st Cir. 2007).

## SUMMARY OF ARGUMENT

The district court correctly held that post-judgment interest on the
punitive damages award started to run upon entry of the July 12, 2022
judgment. That judgment authoritatively determined the sum certain
that TCS was required to pay in punitive damages, and it was not until
that point that the punitive damages were meaningfully ascertained.
This conclusion is supported by the plain language of Section 1961(a)
and the relevant precedent from the Supreme Court and this Court.

Epic urges this Court to hold that post-judgment interest should
run instead from the date of the original judgment entered on October
3, 2017. Epic's position is inconsistent with the plain text of Section
1961(a) because the 2017 judgment is not the judgment on which Epic
actually seeks an interest payment. The punitive damages portion of

that judgment was vacated by this Court in *Epic I* because it was not
supported by the facts and circumstances of the case under the correct
legal principles. This Court remanded the case for the district court to
consider punitive damages anew under the legal principles set by *Epic
I*. On remand, the district court exercised its discretion under those
principles and did exactly that. As the district court itself understood, it
was not until the district court made that determination that the
punitive damages award was meaningfully ascertained. And it is that
judgment setting the punitive damages award under the correct legal
principles on which Epic seeks post-judgment interest. Accordingly,
post-judgment interest should run from the date of that judgment.

## ARGUMENT

## I. POST-JUDGMENT INTEREST RUNS FROM THE ENTRY OF THE JUDGMENT AUTHORITATIVELY DEFINING THE AMOUNT OF DAMAGES ON WHICH INTEREST IS OWED.

The plain text of 28 U.S.C. § 1961(a) and authority from the
Supreme Court and this Court all support the conclusion that post-
judgment interest accrues from the date of the entry of the
authoritatively defined sum on which interest is sought. In this case,
there was no authoritatively defined sum until the district court, on

remand from this Court, revisited punitive damages anew and applied

the background rules of law this Court had directed it to consider.

**A.** **The Plain Text of 28 U.S.C. § 1961(a) and This Court's Precedents Support Calculating Interest From the Date of Judgment Authoritatively Defining the Sum Subject to Execution.**

Title 28 U.S.C. § 1961(a) provides in relevant part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment … .

The plain language and structure of the statute make it "clear

that 'the judgment' referred to in the third quoted sentence is the

'money judgment' specified in the first." *Eaves v. Cnty. of Cape May*, 239

F.3d 527, 532 (3d Cir. 2001). Section 1961(a) thus provides that

"[i]nterest … on any money judgment" is calculated "from the date of

the entry of" *the same judgment*. 28 U.S.C. § 1961(a). Simply put, Epic

does not seek post-judgment interest on the $280 million punitive

damages award the district court entered on October 3, 2017, which was

subsequently vacated by this Court. Rather, it seeks post-judgment

interest on the $140 million award the district court entered on July 12, 2022; post-judgment interest should be calculated from this date.

This Court's precedents defining the term "money judgment," most of which Epic ignores, confirm this plain reading. They demonstrate that a "money judgment" is a quantified sum, *EEOC v. Gurnee Inns, Inc.*, 956 F.2d 146, 149 (7th Cir. 1992); *In re Burlington N., Inc. Emp. Practices Litig.*, 810 F.2d 601, 609 (7th Cir. 1986), which has been authoritatively defined, *Harris v. Chicago Great Western Railway Co.*, 197 F.2d 829, 830, 836 (7th Cir. 1952).

In *Gurnee Inns*, this Court concluded that a "money judgment" under Section 1961(a) is an amount that is definitively quantified, in other words, a "sum[] certain." 956 F.2d at 149. There, judgment had been entered against Gurnee Inns awarding post-judgment interest on back pay to eight employees. *Id.* at 147. That judgment was subsequently amended to permit Gurnee Inns to make appropriate payroll deductions from the back pay award, though the award itself stayed intact. *Id.* Gurnee Inns first argued that post-judgment interest did not accrue on the award because it was not a "money judgment," but rather, an "injunctive judgment for specific performance." *Id.* at 149. It

also argued that post-judgment interest did not accrue under Section 1961(a) because the checks the court ordered delivered were not for a specified amount, and Section 1961(a) permitted interest only on "'money judgments' in a sum certain." *Id.*

In rejecting Gurnee Inn's second argument, this Court agreed that Section 1961(a) required money judgments to be of a sum certain, but explained that the back pay awards "did not lose their character as sums certain simply because they were subject to the mechanical task of computing the payroll deductions." 956 F.2d at 149; *see also Sterling Nat'l Bank v. Block*, 2019 WL 5085715, at *6 (N.D. Ill. Oct. 10, 2019) (denying post-judgment interest despite ruling on summary judgment because "Seventh Circuit precedent indicates that a money judgment must contain a definite designation of the amount that a prevailing party is owed," which the summary judgment decision did not), *rev'd on other grounds*, 984 F.3d 1210, 1214 (7th Cir. 2021) ("We agree with the district court's denial of pre- and post-judgment interest.").[4]

---

[4] Other courts of appeals have similarly construed the term "money judgment" in Section 1961(a). *See Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.*, 665 F.3d 1091, 1101 (9th Cir. 2011) (citing *Gurnee Inns* and concluding that a money judgment consists of a definite and certain amount owed); *Eaves*, 239 F.3d at 532–33 (identifying the standard in the Seventh Circuit as "whether the judgment at issue required a party

In such a case, the amount is fixed and unalterable, even though the calculation that will reveal it has yet to take place. This case is nothing like that because the district court here was asked to apply discretion under the guidance of common law principles to determine an appropriate amount, not merely reveal through mechanical calculation the amount the law has determined.

For the same reason, in *In re Burlington Northern*, this Court declined to award post-judgment interest from the date it approved a consent decree awarding attorney's fees, and instead awarded interest from the date it entered judgment quantifying those fees. 810 F.2d at 609. Though the entry of a final order approving the consent decree had entitled the party to reasonable attorney's fees, the district court only entered a total lodestar fee after receiving briefing and affidavit testimony, including concerning the hourly rates requested by lead counsel and the use of a multiplier. *Id.* at 604. This Court ruled that it was the district court's September 1985 order that started the clock for

---

to pay a fixed sum"); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992) (post-judgment interest did not accrue on an unliquidated sum); *Harper v. BP Exploration & Oil, Inc.*, 3 F. App'x 204, 210 (6th Cir. 2001) ("And because § 1961 applies to 'money judgments,' it only applies to judgments in which a sum of money has been entered. In this case, that was the judgment quantifying the award.").

purposes of interest—the date it quantified the sum of $2,184,165.50.

*Id.* at 604, 609. In rejecting the argument that counsel was prejudiced

by the delay between the approval of the consent decree and the

judgment setting the fee award, this Court recognized that it was

"bound by the statutory presumption that interest on money judgments

'shall be calculated from the date of the entry of the judgment.'" *Id.* at

609 (quoting 28 U.S.C. § 1961(a)); *see also Eaves*, 239 F.3d at 534 (citing

*In re Burlington Northern* in support of the proposition that a "money

judgment" requires "an award of a fixed sum" and noting that "§ 1961(a)

only authorized interest from date of entry of judgment").

Harris likewise provides that the quantified sums must be

authoritatively defined for interest to accrue. There, the district court

awarded $500,000 in attorney's fees as part of its initial judgment.

*Harris*, 197 F.2d at 836. On appeal, this Court concluded that "[t]his

determination was erroneous," and directed the district court to enter

judgment for $350,000 in fees on remand. *Id.* Importantly, this Court

also held that post-judgment interest should be calculated from the date

of the money judgment entered after the remand. *Id.* As the Court

explained, "neither the amount due for fees nor the due date of the

obligation was authoritatively defined" until the specific amount of fees was established, and there would "be a final valid judgment only when a new one shall have been entered in conformity with [the Seventh Circuit's] mandate." *Id.*; *see also Divane II*, 319 F.3d at 322 (awarding post-judgment interest on a sanctions award from the date it was "set" on remand).

The application of these precedents to this case is clear. There was no authoritatively defined sum certain on which interest began to accrue until the district court evaluated the evidence after remand and quantified the amount of punitive damages that were supported by the facts and circumstances under the correct legal principles articulated by the Court in *Epic I*.

Tellingly, Epic ignores most of these precedents and does not even acknowledge that this Court has previously defined the term "money judgment" in Section 1961(a). Epic instead contends that this Court should construe the term "money judgment," based on a few, selective dictionary definitions, to mean "a district court's conclusion that a prevailing party is entitled to collect money." Epic Br. at 22. But this approach disregards the decisions discussed above and cannot be

reconciled with the text—it is not at all plain from the language of the statute that interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield" would accrue on a "conclusion" that has been "w[on]" in some sense. *Id.*; *accord* 28 U.S.C. § 1961(a). Rather, the natural reading of the language of the statute is that interest accrues when a defined sum of money is fixed.

Epic also contends that "the judgment" referred to in the third sentence of Section 1961(a) refers to a money judgment "recovered" in the district court. Epic Br. at 20. But the statute provides that "interest shall be calculated from the date of the entry of the judgment," not the date a money judgment is "recovered." 28 U.S.C. § 1961(a). Regardless, a money judgment, as a sum certain that has been authoritatively defined, was not "recovered" in this case until the district court entered its subsequent judgment following remand.

### B. *Kaiser* Supports This Reading.

The Supreme Court's decision in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990), as illuminated by the procedural history of the case, reinforces this plain reading of Section 1961(a). In that case, the district court entered judgment on damages in favor of

the plaintiff on August 22, 1979, but it subsequently vacated that judgment on Kaiser's motion for a new trial as to damages only. *Id.* at 830. The district court reasoned that "[a]lthough plaintiff did show economic injury in consequence of defendants' conduct, the evidence presented by [the plaintiff] *as to the actual dollar amount of damages suffered* was so deficient as to require a new trial on damages only." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 518 F. Supp. 102, 114 (E.D. Pa. 1981) (emphasis added). The district court stated that it had given "serious consideration to ordering a remittitur," but explained that "no reasoned basis could be found for setting an appropriate figure." *Id.* at 119.

When the Supreme Court later decided the date from which post-judgment interest would accrue, it explained that the appropriate date was December 4, 1981, the date judgment was entered after the subsequent damages retrial. *Kaiser*, 494 U.S. at 836. The Court observed that "[t]he District Court's determination that the jury's finding on damages was not supported by the evidence was not appealed by either party," and thus "[w]here the judgment on damages

was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way." *Id.* at 835–36.

From the context supplied by the opinion of the district court in *Kaiser*, it is clear that in order for damages to be meaningfully ascertained such that post-judgment interest accrues, the *amount of damages owed* must be ascertained from the evidence. Epic's argument to the contrary (*see* Epic Br. 30–31) that the Supreme Court's decision in *Kaiser* to award post-judgment interest from the judgment entered after retrial stemmed from a lack of entitlement to money damages therefore misses the mark.

Here, this Court determined that the circumstances presented in the case—including that TCS's conduct was "not egregious," that TCS has already been subject to a substantial compensatory damages award, that TCS's conduct did not involve a risk of physical harm, and that the economic harm suffered was not substantial, *Epic I* , 980 F.3d at 1141, 1143–44—meant that the maximum constitutional punitive damages award that could conceivably be supported under the Constitution was $140 million. Thus, as in *Kaiser*, this court determined that the evidence did not support the $280 million awarded, and the amount

supported by the evidence was meaningfully ascertained only when the district court entered the subsequent judgment after considering the evidence under the correct legal principles clarified by this Court.

*Kelly v. Secretary of Department of Housing & Urban Development*, 97 F.3d 118 (6th Cir. 1996), which applies *Kaiser*, further illustrates the point. There, an ALJ found the Kellys liable for housing discrimination and awarded $10,430.76 in damages after a hearing in May 1992. *Id.* at 120. On appeal, the Sixth Circuit upheld the liability finding but vacated the damages award and remanded the case for further attempts at conciliation. *Id.* When those efforts failed, the court ordered the ALJ to reconsider the damages award in light of the opinion and instructed that no damages should be assessed for the period HUD neglected the case. *Id.* The ALJ reduced damages by only $1. *Id.* On a subsequent appeal, the Sixth Circuit held that the record supported a damages award of $4,571.03 based on the evidence. *Id.* at 121. The Sixth Circuit held that post-judgment interest did not accrue on the damages award up to the point of its decision on appeal, as "damages have not been 'meaningfully ascertained' until" that time. *Id.* at 122. Similarly here, damages were not meaningfully ascertained until the

district court on remand assessed the amount of damages justified by the evidence under the principles clarified by *Epic I*.

## C. The Statutory Purpose of Section 1961(a) Supports This Reading.

The purpose for which post-judgment interest is awarded also supports reading Section 1961(a) to permit post-judgment interest only on the judgment entering the authoritatively defined amount on which that interest is sought. As the Supreme Court explained in *Kaiser*, "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." 494 U.S. at 835–36 (citation and internal quotation marks omitted). Where, as here, "the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way," and "[i]t would be counterintuitive … to believe that Congress intended postjudgment interest to be calculated from such a judgment." *Id.*

Epic's contrary argument that it, as a prevailing party, should not be compelled to loan money to the opposing party until the sum owed is authoritatively defined, Epic Br. at 25–26, is substantially similar to

the argument the Supreme Court rejected in *Kaiser*. There, the Supreme Court declined to award post-judgment interest from the date of the verdict, as opposed to the date of the judgment, abrogating a line of decisions by courts of appeals that had "determined that interest should run from the verdict." *Kaiser*, 494 U.S. at 834. Those decisions, which the Supreme Court rejected, had "looked to the policy underlying the postjudgment interest statute—compensation of the plaintiff for the loss of the money—in reaching their conclusion that interest should run from the date of the verdict despite the language of the statute." *Id.* The Court rejected that argument, noting that "[t]he starting point for interpretation of a statute 'is the language of the statute itself.'" *Id.* at 835 (citation omitted). As the Court explained, "[b]oth the original and the amended versions of § 1961 refer specifically to the 'date of judgment,' which indicates a date certain"—i.e., the date of the entry of the judgment setting the award. *Id.* And "[e]ven though denial of interest from verdict to judgment may result in the plaintiff bearing the burden of the loss of the use of the money from verdict to judgment, the allocation of the costs accruing from litigation is a matter for the legislature, not the courts." *Id.*

This Court's explanation of the purpose of postjudgment interest likewise supports the district court's conclusion here. As this Court has explained, Section 1961(a) was "designed to ensure the prompt payment of judgments by recalcitrant defendants." *Houben v. Telular Corp.*, 309 F.3d 1028, 1040 (7th Cir. 2002). In no sense can TCS be considered recalcitrant with respect to the payment of punitive damages, as the amount it was ultimately ordered to pay was not authoritatively defined until the district court entered judgment on remand. And as soon as the punitive damages award was finally determined, TCS promptly paid that amount to Epic. *See* R. 1063 at 4.

*Merit Insurance Co. v. Leatherby Insurance Co.*, 728 F.2d 943 (7th Cir. 1984) (per curiam), does not support Epic's position, either. *See, e.g.*, Epic Br. at 18. There, the district court initially confirmed an arbitration award awarding Merit Insurance Company $10,675,000 in a dispute against Leatherby Insurance Company. *Merit*, 728 F.2d at 944. On Leatherby's Rule 60(b) motion, the district court reconsidered and vacated the arbitration award. *Id.* Merit appealed, and this Court reversed, reinstating the previous judgment confirming the arbitration award. *Id.* In the subsequent appeal, Leatherby argued that post-

judgment interest should be suspended for the period between the district court's order setting aside its previous confirmation of the arbitration award and the Seventh Circuit's reversal of that order. *Id.* at 945. This Court rejected that argument, explaining that Merit should receive interest for the entire post-judgment period because the court of appeals had fully reinstated the original judgment confirming the award. The situation here is plainly different: *Epic I* vacated the original punitive damages award, and *Epic II* did not reinstate it.

Together, the plain text of the statute and this Court's precedents, decisions from other courts, and the purpose of Section 1961(a) indicate that post-judgment interest runs from the entry of the authoritatively defined amount of money on which interest is sought.

## II. THE DISTRICT COURT CORRECTLY HELD THAT POST-JUDGMENT INTEREST SHOULD NOT RUN FROM THE SINCE-VACATED ORIGINAL JUDGMENT.

In holding that post-judgment interest runs from July 12, 2022, the district court explained that "the Seventh Circuit here *vacated* the punitive damage[s] award and directed this court to reduce the award because the 'facts and circumstances of this case' did *not* justify the original award." A6. The district court also observed that the Seventh

Circuit did not "dictate the amount of that award on remand, but rather permitted an award of 'at most' $140 million in punitive damages." *Id.* Because the district court on remand "considered the relevant evidence, including its compensatory damages award and defendant's conduct in light of the constitutional considerations articulated by [the] Supreme Court and [the] Seventh Circuit," it concluded that the punitive damages award was meaningfully ascertained only after it entered the authoritatively defined amount after remand. *Id.* at A6–7. This holding is consistent with this Court's precedent, and Epic's authority is inapposite.

## A.  *Harris* and *Divane II* Squarely Support the District Court's Decision.

The district court's decision is squarely supported by this Court's decisions in *Harris* and *Divane II*. As described *supra* at 15–16, this Court in *Harris* held that post-judgment interest ran from a judgment authoritatively defining the amount of attorney's fees owed, entered after remand. 197 F.2d at 836. Epic contends that *Harris* supports its position because the original judgment in that case was "'interwoven with erroneous conceptions'—among them, the district court's legally improper consideration of the merits in the case." Epic Br. at 35. But

the Seventh Circuit in *Harris* reduced the total allowance of fees to $350,000 to account for this error. 197 F.2d at 835 ("After mature consideration, we have concluded that a total allowance of $350,000 is entirely adequate and, indeed, liberal, and that, by the allowance of such sum, we have eradicated those factors erroneously considered by the court."). Epic fails to explain why post-judgment interest did not run from the original judgment where the $350,000 had both a firm legal and evidentiary basis under its theory. The answer is because the amount of fees was not "authoritatively defined" until the district court entered a final valid judgment in conformance with this Court's mandate. *Id.* at 836.

The district court's opinion in this case is also supported by *Divane II*. There, the Seventh Circuit observed that in an earlier appeal in the same litigation it had "upheld the district court's imposition of Rule 11 sanctions" against an attorney, but it vacated the award due to several errors and "remanded the case to the district court to determine the appropriate amount of sanctions." 319 F.3d at 309. On remand, the district court entered a new judgment reflecting a reduced sanctions award. *Id.* at 313, 317. In the subsequent appeal, this Court held that

post-judgment interest should accrue from the second judgment, entered after the remand. *Id.* at 322. This was the appropriate date, this Court explained, because it was "the date that the sanction award … was set." *Id.* at 322 (citing *Kaiser*, 494 U.S. at 835–36, and *Harris* and noting that *Harris* held that post-judgment interest should "accrue only from the date of the revised judgment").

Epic contends that *Divane II* supports its position because post-judgment interest did not run from the district court's first judgment, which reflected legal and factual errors and thereby did not entitle plaintiffs to sanctions. Epic Br. at 32. But the plaintiffs were held to be entitled to sanctions after their first appeal; the Seventh Circuit remanded for a recomputation of the amount of the award. *See Divane v. Krull Elec. Co.* ("*Divane I*"), 200 F.3d 1020, 1022 (7th Cir. 1999) ("[W]e affirm the sanction determination but vacate the award and remand to the district court for recomputation."); *id.* at 1030 ("[W]e affirm the district court's decision to impose sanctions … ."). The plaintiffs' "entitlement to damages" was therefore established in the first appeal and not subsequently disturbed after the award was

determined.[5] Therefore, under *Harris* and *Divane II*, the relevant date for calculating post-judgment interest is the date of the subsequent judgment, when the punitive damages number was set.

## B.    Epic's Authority Is Inapposite.

Epic instead contends that the Seventh Circuit's vacatur of the original judgment awarding punitive damages does not undermine the factual or legal basis for the October 2017 award. Epic Br. at 27. But the cases on which Epic relies are inapposite.

In *Exxon Valdez v. Exxon Mobil*, the Supreme Court ordered the reduction of punitive damages to a 1:1 ratio with compensatory damages, and the parties stipulated on remand to the entry of a judgment in that amount. 568 F.3d 1077, 1079 (9th Cir. 2009). With the case in that posture, the Ninth Circuit invoked Federal Rule of

---

[5] Epic also contends that the Court's decision in *Divane II* to allow post-judgment interest from the district court's incorrectly calculated fee award demonstrates that the prevailing party's entitlement to damages is determinative, not the entry of the precise calculation of damages owed. Epic Br. at 34. As described above, the *Divane II* plaintiffs' entitlement to damages was affirmed on the first appeal, and post-judgment interest ran from the date of the district court's judgment on the first remand because the only calculation that remained was the "mechanical task," *see Gurnee Inns*, 956 F.2d at 149, of subtracting improperly included "fees generated before the filing of the sanctionable answer and counterclaim." *Divane II*, 319 F.3d at 318 (explaining that "in the face of clear evidence—because the burdensome and inexact task of interrelated-claim segregation discussed above is not at issue for the time period before the sanctionable papers were even filed—we will make the deduction").

Appellate Procedure 37(b), which provides that the court of appeals shall determine whether interest will run from the date of an original or subsequent judgment where the court of appeals "modifies or reverses a judgment with a direction that a money judgment be entered in the district court." *Id.* at 1080 (quoting Fed. R. App. P. 37(b)). The Ninth Circuit held in such a case, "when the evidentiary and legal bases for an award were sound" and not disturbed on appeal, interest should run from the date of the original judgment. *Id.*

The situation here is different. Unlike in *Exxon*, this Court here did not direct, and the parties did not stipulate to, entry of a particular punitive damages judgment on remand. To the contrary, although this Court held that a punitive damages award in this case could not exceed $140 million consistent with federal due process limitations, it did not direct the entry of a judgment in that or any other specific amount, but rather vacated the entire punitive damages award and remanded to the district court to address punitive damages anew (and accordingly this Court did not invoke Rule 37(b)). *See Epic I*, 980 F.3d at 1145–46.

Moreover, after Epic petitioned for rehearing, this Court revised its opinion in *Epic I* to make particularly clear that the district court

was to determine the amount of punitive damages based on its own assessment of the record, not to exceed the due process limit. The district court was instructed to consider factors discussed in cases like *Saccameno*, 943 F.3d 1071, which apply independently of any constitutional limits and ensure that the punitive award is rational and not excessive under non-constitutional principles. This Court's amended opinion emphasized that "the Constitution is not the most relevant limit to a federal court when assessing punitive damages, as it comes into play only after the assessment has been tested against statutory and common-law principles," and "a federal court … can (and should) reduce a punitive damages award sometime before it reaches the outermost limits of due process." *Epic I*, 980 F.3d at 1140 (quoting *Saccameno*, 943 F.3d at 1086 (brackets and internal quotation marks omitted)).

As noted above, the Ninth Circuit explained in *Exxon* that interest can run from the date of an original judgment only where "the evidentiary and legal bases for an award were sound." 568 F.3d at 1080. That is, even according to the Ninth Circuit, only when the relevant portion of the original award was determined, after appeal, to have been adjudicated in a legally sound manner will interest run from the

date of that original judgment. *Cf. Transmatic, Inc. v. Gulton Indus.,
Inc.*, 180 F.3d 1343, 1349 (Fed. Cir. 1999) (holding that date of original
judgment should be used for interest calculation where initial "damages
decision was ultimately correct on the merits" and court of appeals had
remanded only for procedural reasons so that district court could better
explain its reasoning); *ABS Global, Inc. v. Inguran, LLC*, 2020 WL
2405380, at *7 (W.D. Wis. May 12, 2020) (holding that date of original
judgment should be used for interest calculation where damages portion
of judgment was not disturbed on appeal and was therefore
"meaningfully ascertained as of the date of the first judgment").

But where, as here, the punitive damages award was vacated in
its entirety and the case was remanded for a fresh determination in
light of legal standards not previously addressed by the district court,
the original award cannot be said to have rested on a sound legal basis.
That view is not only dictated by the Seventh Circuit authority
discussed above, but is consistent with the approach other circuits have
taken. *See, e.g.*, *Harris*, 197 F.2d at 836; *Lewis v. Whelan*, 99 F.3d 542,
545 (2d Cir. 1996) ("[W]here the first judgment is vacated because it
lacks a legal basis or requires further factual development, the vacated

award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand."); *Hysell v. Iowa Public Serv. Co.*, 559 F.2d 468, 476 (8th Cir. 1977) ("The [first] judgment … was expressly vacated on appeal as legally insufficient. Interest does not accrue on a vacated judgment. Rather, the proper date for the computation of postjudgment interest is … when the District Court entered judgment after remand." (citations omitted)); *Dakota, Minn. & E. R.R. Corp. v. Ingram Barge Co.*, 2020 WL 1663413, at *2 (N.D. Iowa Apr. 3, 2020) (applying *Hysell* and holding that "post-judgment interest … is available only from the date of judgment on remand").

Epic also argues that the district court was wrong to distinguish *Exxon* on the basis that the parties stipulated to the amount of damages, arguing that "a stipulation entered into in 2009 could not render damages 'meaningfully ascertained' as of 1996." Epic Br. at 45. But Epic misunderstands the district court's reasoning. It explained that *Exxon* was distinguishable because the court on remand was not tasked with exercising its discretion and determining the amount of damages, as the parties had already stipulated to an amount. *See* A6.

Nor should this Court adopt Epic's broad interpretation of the Eleventh Circuit's decision in *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999), which contradicts the requirement in this Circuit that there be an authoritatively defined sum of money for interest to begin to accrue under Section 1961(a). In *Johansen*, the Eleventh Circuit held that post-judgment interest on a punitive damages award ran from the date of the initial entry of judgment on a punitive damages award despite a reexamination of that award on remand. *Id.* at 1327, 1339–40. The court in this portion of its opinion likened a constitutionally excessive verdict to a remittitur. It explained that "a remittitur merely reduces the damages by a distinct amount easily determined from the facts of the case" and applied this reasoning in the context of a constitutionally excessive verdict. *Id.* at 1340.

But here, the district court was not tasked with merely reducing damages by a distinct amount easily determined from the facts of the case. Rather, this Court's ruling in *Epic I* recognized that "the Constitution is not the most relevant limit to a federal court when assessing punitive damages, as it comes into play 'only after the assessment has been tested against statutory and common-law

principles.'" *Epic I*, 980 F.3d at 1140 (quoting *Saccameno*, 943 F.3d at 1086). Thus, the district court on remand was tasked with evaluating the entire record and, in the exercise of its discretion, determining the appropriate amount of punitive damages anew, under the principles clarified by this Court in *Epic I*.

Indeed, *Johansen* itself recognizes that "[w]hen an original judgment is not completely vacated, the date from which post-judgment interest runs turns on the degree to which the original judgment is upheld or invalidated." 170 F.3d at 1339. Here, the original judgment with respect to punitive damages *was* "completely vacated" by this Court, which cleared the way for the district court to consider the issue of punitive damages anew.

*Dunn v. HOVIC*, 13 F.3d 58 (3d Cir. 1993), is likewise distinguishable. *See* Epic Br. at 27. There, the punitive damages award was remitted, not vacated in its entirety. And indeed that was the very basis on which the Third Circuit distinguished *Kaiser*. *See Dunn*, 13 F.3d at 60 ("This case is distinguishable from *Kaiser*, because here there was a remittitur, not an overturning of the entire damage verdict."); *see also id.* at 61 ("[A]lthough it was determined by the district court and

later on appeal that the jury's damage award was too high, the entire award was not vacated, but was merely reduced.").

The same principle distinguishes *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382 (9th Cir. 1992). *See* Epic Br. at 27. In the first appeal in that case, unlike here, "the district court's determination of damages was not challenged as unsupported by the evidence or on any other ground," and the court of appeals "affirmed that determination." *Tinsley*, 979 F.2d at 1383. The case was remanded "solely to reduce the award in proportion to the plaintiff's negligence, instructing the district court to 'reduce the damage award already calculated according to the percentage of [the plaintiff's] fault.'" *Id.* (citation omitted). And again, this was precisely how the Ninth Circuit distinguished *Kaiser*, noting that in *Kaiser* the damages portion of the original judgment had been "vacated … completely." *Id.*[6]

---

[6] Epic's other cases (*see* Epic Br. at 27) are distinguishable on the same basis. *See Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 954 F.2d 1263, 1274–75 (6th Cir. 1992) (distinguishing *Kaiser* on the ground that damages portion of the judgment had been completely "set aside" whereas in this case there had been a remittitur and that remittitur "merely reduced the damages by a distinct amount easily determined from the facts of the case"); *N. Nat. Gas Co. v. Hegler*, 818 F.2d 730, 737–38 (10th Cir. 1987) (remand was for the limited purpose of recomputing "the trial court's helium value determination" and noting that "the reversal was not on any basic liability errors or errors in procedure which affected the basic issues but on a dollar value, a matter of degree").

Nor does *Kneeland v. American Loan & Trust Co.*, 138 U.S. 509 (1891), support Epic's position. The Supreme Court in *Kaiser* made plain that the text of Section 1961(a) governs determinations on post-judgment interest, not the "[e]quit[ies]." *See* 494 U.S. at 834–35 (holding that post-judgment interest runs from the date of the entry of the judgment, not the verdict). Likewise, Epic's contention that the character of the judgment entered (e.g., a vacatur or reversal) is immaterial under Section 1961(a) is undermined by *Kaiser*. *See* 494 U.S. at 836 (citing *FDIC v. Rocket Oil Co.*, 865 F.2d 1158 (10th Cir. 1989), for the proposition that "postjudgment interest may not be calculated from judgment that was completely reversed" and explaining that it would be "counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment").

Moreover, in *Kneeland*, the court awarded interest from the entry of the original decrees because they amounted to an authoritatively defined sum certain. That is, the court on remand was *not* charged with determining the appropriate amounts due to the intervenors from the evidence, because "all that the court had to do was to deduct from the

amount allowed to each intervenor one-third of the amount allowed for the year ending August 1, 1884." 138 U.S. at 511. Indeed, the Court's opinion emphasized this very point: "Counsel claims that under the reversal the whole matter of inquiry as to the accounts was opened. On the contrary, the clear language of our decision was to strike out certain specific items, and to allow others as already fixed." *Id.* at 513. In other words, unlike here, all that was left for the lower court on remand with respect to the quantification of the award was the "mechanical task" of deducting certain amounts. *Gurnee Inns*, 956 F.2d at 149.

Here, by contrast, the district court was not tasked with simply "lopping off," Epic Br. at 18, 46, an easily defined amount, but rather was required to consider the full record in light of the legal principles set by this Court in *Epic I. See Epic* I, 980 F.3d at 1144 (explaining that "the precise award must be based on the facts and circumstances of the defendant's conduct and the harm to the plaintiff" (citation and internal quotation marks omitted)). And that is how the district court itself understood its task. *See* R. 1045 at 2 ("The Seventh Circuit plainly charged [the district court] *to exercise its discretion* on remand and

enter an award up to a constitutional maximum of $140 million in light of the record in the case as a whole." (emphasis added)).

It was not until the district court exercised its discretion, considered punitive damages under the appropriate legal principles, and entered the subsequent judgment in 2022 that Epic's entitlement to punitive damages was meaningfully ascertained. Accordingly, post-judgment interest on punitive damages should not begin to run until that date.

## CONCLUSION

For the foregoing reasons, TCS respectfully requests that the Court affirm the judgment of the district court.

March 14, 2025

s/ Robert N. Hochman
Robert N. Hochman
   *Counsel of Record*
Neil H. Conrad
Katherine Surma
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
rhochman@sidley.com
nconrad@sidley.com
ksurma@sidley.com

Christopher M. Egleson
SIDLEY AUSTIN LLP
1001 Page Mill Road Building 1

Palo Alto, CA 94304
(650) 565-7000
cegleson@sidley.com

*Counsel for Tata Consultancy
Services Limited and Tata America
International Corporation*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i), as modified by Circuit Rule 32(c). The brief contains 7,897 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), as modified by Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font in the body of the brief and 12-point Century Schoolbook font in the footnotes.

March 14, 2025

s/ Robert N. Hochman
Robert N. Hochman
   *Counsel of Record*
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
rhochman@sidley.com

*Counsel for Tata Consultancy Services Limited and Tata America International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

March 14, 2025

s/ Robert N. Hochman
Robert N. Hochman
 *Counsel of Record*
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
rhochman@sidley.com

*Counsel for Tata Consultancy Services Limited and Tata America International Corporation*