No. 24-2882

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

EPIC SYSTEMS CORPORATION,
*Plaintiff-Appellant,*

v.

TATA CONSULTANCY SERVICES LIMITED & TATA AMERICA
INTERNATIONAL CORPORATION (dba TCS AMERICA),
*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin, No. 3:14-cv-00748-wmc (Conley, J.)

_____

**REPLY BRIEF OF PLAINTIFF-APPELLANT
EPIC SYSTEMS CORPORATION**

_____

Michael T. Brody
  *Counsel of Record*
Simon A. de Carvalho
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com

Kathryn L. Wynbrandt
JENNER & BLOCK LLP
1099 New York Avenue NW
  Suite 900
Washington, DC 20001
(202) 639-6000

Kristin G. Noel
QUARLES & BRADY LLP
33 East Main Street
Madison, WI 53703
(608) 251-5000

*Attorneys for Plaintiff-Appellant Epic Systems Corporation*

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................. 3

I.  UNDER SECTION 1961(a), INTEREST RUNS FROM THE JUDGMENT
    FIRST ESTABLISHING THE PLAINTIFF'S LEGAL AND FACTUAL
    ENTITLEMENT TO COLLECT THE DAMAGES ON WHICH INTEREST
    IS OWED. ........................................................................... 3

    A.  TCS Fails to Counter Epic's Interpretation of the Statute's Text ............ 4

    B.  TCS Identifies No Cases Adopting Its Desired Rule, Cannot
        Distinguish Epic's Cases, and Does Not Dispute That Accepting
        Its Position Would Create a Circuit Split. ................................. 6

II. TCS'S ARGUMENTS TO THE CONTRARY FAIL. ......................................... 9

    A.  TCS's Two-Sentence Plain-Text Argument Is Waived and Wrong. ............. 9

    B.  TCS's "Authoritatively Defined Sum Certain" Test Is Unsupported
        by Section 1961(a)'s Text and the Relevant Case Law, and
        It Requires Ruling for Epic in Any Event. ............................... 10

        1.  Nothing in This Case Turns on TCS's Observation That a
            "Money Judgment" Must State a "Sum Certain." ......................... 11

        2.  *Harris*'s "Authoritatively Defined" Language Does Not Differ
            From the "Meaningfully Ascertained" Test Adopted by Other
            Courts. ........................................................... 13

        3.  *Kaiser*, *Harris,* and *Divane II* All Support Epic's Position. ...... 14

        4.  This Case Falls Within the Exception to TCS's Rule. ................. 18

III. TCS MISAPPREHENDS THE NATURE AND SIGNIFICANCE OF THE
     VACATUR. ........................................................................ 18

IV. THIS COURT SHOULD REJECT TCS'S REQUEST FOR A WINDFALL. ....... 22

CONCLUSION ............................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*,
No. 74-cv-122, 1988 WL 35879 (E.D. Pa. Apr. 12, 1988) .......................... 15

*Bradley v. Vill. of Univ. Park*,
59 F.4th 887 (7th Cir. 2023) ...................................................... 20

*Brockett v. Effingham Cnty.*,
116 F.4th 680 (7th Cir. 2024) .................................................... 9

*In re Burlington Northern, Inc. Employment Practices Litigation*,
810 F.2d 601 (7th Cir. 1986) ..................................................... 12

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
532 U.S. 424 (2001) ............................................................. 24

*Corley v. United States*,
556 U.S. 303 (2009) ............................................................. 5

*Divane v. Krull Electric Co. (Divane II)*,
319 F.3d 307 (7th Cir. 2003) .................................................... 16

*Dunn v. HOVIC*,
1 F.3d 1371 (3d Cir. 1993) ...................................................... 7

*Dunn v. HOVIC*,
13 F.3d 58 (3d Cir. 1993) ................................................. 6, 15, 24

*In re Exxon Valdez*,
270 F.3d 1215 (9th Cir. 2001) ................................................... 7

*Exxon Valdez v. Exxon Mobil Corp.*,
568 F.3d 1077 (9th Cir. 2009) ................................................. 6, 8

*Harris v. Chicago Great Western Railway Co.*,
197 F.2d 829 (7th Cir. 1952) ............................................13, 14, 15, 16

*Horne v. Elec. Eel Mfg. Co., Inc.*,
987 F.3d 704 (7th Cir. 2021) ................................................... 19

*Johansen v. Combustion Engineering, Inc.*,
170 F.3d 1320 (11th Cir. 1999) ............................................1, 3, 7, 8, 18

*Kaiser Aluminum & Chem. Corp. v. Bonjorno,*
    494 U.S. 827 (1990) ......................................................... 2, 14, 23

*Kelly v. Secretary, United States Department of Housing and Urban*
    *Development,*
    97 F.3d 118 (6th Cir. 1996) ..................................................... 17

*Kneeland v. American Loan & Trust Co.* (*Kneeland II*),
    138 U.S. 509 (1891) .................................... 3, 4, 5, 6, 16, 18, 22, 24

*Lewis v. Whelan,*
    99 F.3d 542 (2d Cir. 1996) ...................................................... 16

*Med. Ctr. Pharmacy v. Holder,*
    634 F.3d 830 (5th Cir. 2011) .................................................... 20

*Merit Ins. Co. v. Leatherby Ins. Co.* (*Merit I*),
    714 F.2d 673 (7th Cir. 1983) .................................................... 23

*Merit Ins. Co. v. Leatherby Ins. Co.* (*Merit II*),
    728 F.2d 943 (7th Cir. 1984) ...................................... 2, 23, 24, 25

*Morris v. Am. Nat'l Can Corp.,*
    988 F.2d 50 (8th Cir. 1993) ..................................................... 20

*Saccameno v. U.S. Bank Nat'l Ass'n,*
    943 F.3d 1071 (7th Cir. 2019) .................................................. 19

*Sterling National Bank v. Block,*
    No. 16-cv-9009, 2019 WL 5085715 (N.D. Ill. Oct. 10, 2019) ............... 12, 13

*United States v. Berkowitz,*
    927 F.2d 1376 (7th Cir. 1991) ................................................... 9

*United States v. Hansen,*
    599 U.S. 762 (2023) ............................................................. 4

*United States EEOC v. Gurnee Inns, Inc.,*
    956 F.2d 146 (7th Cir. 1992) ................................................... 11

**Statutes**

28 U.S.C. § 1961(a) .................................................................. 4, 5

**Other Authorities**

*Money Judgment*, Black's Law Dictionary 980 (4th ed. 1951) .................... 4, 12

## INTRODUCTION

Under 28 U.S.C. § 1961(a), post-judgment interest on Epic's $140 million punitive-damages award accrues from the date of the original October 3, 2017 judgment.  As Epic has argued, the text of Section 1961(a), the case law interpreting it, and the purpose of post-judgment interest each require ruling for Epic.  On each point, TCS has no answer.

*Text.*  Epic's opening brief enunciated a standard drawn straight from Section 1961(a)'s text and history: post-judgment interest runs from the judgment setting forth the factual and legal bases for the plaintiff's entitlement to collect the money on which interest is owed.  Rather than engage with Epic's interpretation of the statute directly, TCS cobbles together a new "authoritatively defined sum certain" test that has no basis in the statutory text and is incapable of coherent application.  Ultimately, because TCS's test cannot be reconciled with cases from across the country recognizing that post-judgment interest may accrue from vacated judgments, TCS is forced to create an exception to its new rule for cases in which the true amount of damages "is fixed and unalterable, even though the calculation that will reveal it has yet to take place."  TCS Br. 14.  The problem for TCS is that this case fits that exception—so even under TCS's proposed standard, post-judgment interest runs from the date of the original judgment in this case.

*Precedent.*  Confirming Epic's interpretation of the statute, Epic identified several cases—first among them *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir. 1999)—uniformly applying Epic's rule to hold that post-

judgment interest on a punitive-damages award that was vacated as excessive and subsequently reduced ran from the original, since-vacated judgment. For its part, TCS draws a blank. It identifies no cases reaching the opposite conclusion on similar facts. And while TCS does not openly ask this Court to create a circuit split, that is the inescapable consequence of its position. Yet there is no reason for the Court to do so, because *Johansen* is correct.

**Purpose.** TCS's inability to locate cases adopting its position makes sense, because its position cannot be squared with the statute's purpose. Post-judgment interest serves "to compensate the successful plaintiff" for delays in collecting the judgment, *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (citation omitted), from the "adjudicated wrongdoer," *Merit Ins. Co. v. Leatherby Ins. Co.* (*Merit II*), 728 F.2d 943, 945 (7th Cir. 1984). TCS does not deny that, at all times since the entry of judgment in 2017, Epic has been the successful party, and TCS the adjudicated wrongdoer. Nor does it deny that, by retaining possession of the $140 million punitive-damages award from 2017 until it finally paid that judgment in 2023, it reaped many millions of dollars in benefits. *See* Epic Br. 47. The statute's purpose is plainly served by recognizing Epic's entitlement to interest during this entire period.

This case began because TCS "stole thousands of Epic's documents, lied about it, [and then] covered it up." *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd. (Epic I)*, 980 F.3d 1117, 1140 (7th Cir. 2020). TCS now wishes to secure one final windfall. The Court should not permit it.

**ARGUMENT**

I.   **UNDER SECTION 1961(a), INTEREST RUNS FROM THE JUDGMENT FIRST ESTABLISHING THE PLAINTIFF'S LEGAL AND FACTUAL ENTITLEMENT TO COLLECT THE DAMAGES ON WHICH INTEREST IS OWED.**

Epic's opening brief (at 19-35) advanced a comprehensive interpretation of Section 1961(a) based on (1) the provision's text and history and (2) the large body of case law interpreting and applying it over decades.  Those sources demonstrate that post-judgment interest accrues from the date of the judgment reflecting the plaintiff's legal and factual entitlement to collect money, as determined by the substance of the proceedings rather than their form.  And they establish that, where a district court's "initial [money] judgment is supported by the evidence" but is subsequently vacated and reduced because "a certain portion of that judgment [i]s excessive"—including, as here, under the Due Process Clause—"post-judgment interest should run from the date of the original judgment."  *Johansen*, 170 F.3d at 1339-40 (collecting cases).  Because Epic seeks to collect interest on $140 million in punitive damages "embraced in" the original October 2017 judgment and "incorporated into" the amended July 2022 judgment, *Kneeland v. American Loan & Trust Co.* (*Kneeland II*), 138 U.S. 509, 511-12 (1891), post-judgment interest runs from the original judgment.

TCS has little response to most of this.  On the text, TCS does not dispute that Section 1961(a) employs legal terms of art, but it largely ignores Epic's explication of those terms.  On the case law, TCS essentially concedes that ruling in its favor would require this Court to create a circuit split.  TCS's attempts to factually distinguish Epic's precedents fall flat.

### A.    TCS Fails to Counter Epic's Interpretation of the Statute's Text.

TCS does not dispute that the relevant terms in Section 1961(a) are legal terms of art "in which are accumulated the legal tradition and meaning of centuries of practice." Epic Br. 20 (quoting *United States v. Hansen*, 599 U.S. 762, 774 (2023)). To uncover that accumulated meaning, Epic cited definitions in contemporaneous legal dictionaries as well as the Supreme Court's application of a nearly identical post-judgment interest statute in *Kneeland II*. *See* Epic Br. 20-25. Those sources indicate that, under Section 1961(a), post-judgment interest runs from the entry of the judgment establishing the legal and factual bases for the plaintiff's entitlement to damages, as determined by the "substance," rather than the "form," of proceedings. *Id.* at 23-24 (quoting *Kneeland II*, 138 U.S. at 511-12).

TCS barely responds. TCS brushes aside Epic's dictionary sources by asserting (at 16) that Epic chose them "selective[ly]," but it has not marshalled any definitions supporting its desired outcome. Nor has it attempted to show that the Congress that enacted Section 1961(a) understood the provision's terms differently than Epic submits. That is because Epic's interpretation is correct. Section 1961(a)'s text provides that interest runs from the date the operative money judgment is "recovered," 28 U.S.C. § 1961(a), and contemporaneous sources demonstrate that a money judgment is recovered when it is "w[on]"— that is, when the plaintiff becomes "successful in [the] suit." Epic Br. 22 (quoting Black's Law Dictionary 1440 (4th ed. 1951) ("Black's IV")).

TCS asserts that "the statute provides that 'interest shall be calculated

from the date of the entry of the judgment,' not the date a money judgment is 'recovered.'" TCS Br. 17 (citation omitted). But as TCS acknowledges, "'the judgment' referred to in the [statute's] third … sentence is the 'money judgment' specified in the first." *Id.* at 11 (citation omitted). Epic agrees. *See* Epic Br. 20. That first sentence, however, states that "[i]nterest shall be allowed on any money judgment … *recovered in a district court.*" 28 U.S.C. § 1961(a) (emphasis added). So while the statute provides that interest accrues from "the date of the entry" of the relevant judgment, determining *which* judgment is the relevant one requires asking when the money award on which interest is owed was "recovered." *Id.* The answer here is October 2017. TCS's interpretation of Section 1961(a), which reads "recovered" out of the statute altogether, violates "one of the most basic interpretive canons"—that "a statute should be construed … so that no part will be inoperative or superfluous." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation marks, alterations, and citation omitted).

As for Epic's contention that Section 1961(a) should be interpreted in light of the Supreme Court's decision in *Kneeland II*, TCS misses the point entirely. *Kneeland II* held that post-judgment interest under a materially identical precursor statute should be awarded according to the "substance" of the proceedings and without regard to whether the original judgment was reversed, vacated, or affirmed in "form." 138 U.S. at 511-12; *see* Epic Br. 23-25. TCS responds (at 36) by observing that "the text of Section 1961(a) governs"—Epic agrees—and leaping from there to the conclusion that *Kneeland II* should be ignored because it relies not on that text but on "the '[e]quit[ies].'"

But Epic's argument *is* rooted in Section 1961(a)'s text.  Epic argued (at 23-25) that Section 1961(a)'s text—which is materially identical to the statute in effect at the time of *Kneeland II*, a point TCS does not dispute—*incorporates* the rule from *Kneeland II* that when "matters embraced in the former decrees [a]re ordered to be incorporated into the new," post-judgment interest runs from the earlier judgment.  138 U.S. at 511-12.  TCS has not argued that the Congress that enacted Section 1961(a) intended or understood otherwise.

**B.    TCS Identifies No Cases Adopting Its Desired Rule, Cannot Distinguish Epic's Cases, and Does Not Dispute That Accepting Its Position Would Create a Circuit Split.**

Nor did Epic make its textual arguments in a vacuum.  To the contrary, Epic's opening brief identified (at 26-35) a tidal wave of cases interpreting and applying Section 1961(a) in line with the principles articulated in *Kneeland II* and embodied in the statute's text.  Those cases demonstrate that, "when the bases for an earlier judgment are factually and legally sound, post-judgment interest accrues from the entry of that judgment—even if later developments reduce the amount of damages owed, and even if the initial judgment has been formally vacated."  Epic Br. 26-27 (collecting cases).  And crucially, the cases that have applied that rule in scenarios like this one—where a punitive-damages award is vacated as excessive and subsequently reduced—all support Epic's position.  *See id.* at 27-30 (citing *Johansen*; *Dunn v. HOVIC*, 13 F.3d 58 (3d Cir. 1993); and *Exxon Valdez v. Exxon Mobil Corp.*, 568 F.3d 1077 (9th Cir. 2009)).  Each of those cases involved a jury's punitive-damages award that was vacated as excessive and subsequently reduced.  Yet each case held that interest under

6

Section 1961(a) accrued from the original judgment.  *See* Epic Br. 42.

TCS has no answer.  It identifies no case reaching the opposite conclusion and holding that post-judgment interest on a reduced punitive-damages award runs from the later judgment finalizing the reduced award rather than the original, now-vacated judgment.  Nor does it ever explain why *Johansen*, *Dunn*, or *Exxon* were wrongly decided.  Instead, it attempts to distinguish those cases on their facts.  But that effort falls woefully short.

TCS suggests that in each of these cases, the punitive-damages judgments were not "completely vacated," while the judgment here "*was.*"  TCS Br. 34 (discussing *Johansen*); *see id.* (asserting that in *Dunn* "the punitive damages award was remitted, not vacated in its entirety").  But that is not so.  The judgment in *Johansen* was vacated after the Supreme Court decided *Gore*, leaving the district court to "reexamine[] the punitive award under" that new test.  170 F.3d at 1327.  While TCS is correct that *Dunn* involved a remittitur, the judgment there was vacated, too.  *See Dunn v. HOVIC*, 1 F.3d 1371, 1391 (3d Cir. 1993) ("[W]e will vacate the judgment of punitive damages and remand the case to the district court with instructions to enter a new judgment for punitive damages.").  So too in *Exxon*.  *See In re Exxon Valdez*, 270 F.3d 1215, 1246-47 (9th Cir. 2001) ("We … vacate the award and remand so that the district court can set a lower amount in light of … [*Gore*].").[1]  TCS has not explained why the

---

[1] TCS suggests (at 28) two further bases for distinguishing *Exxon*: (1) "the Supreme Court ordered the reduction of punitive damages to a 1:1 ratio with compensatory damages," and (2) "the parties stipulated on remand to the entry of a judgment in that amount."  The first basis is no basis at all, because it is

vacatur here was any more "complete" than the ones in *Johansen*, *Dunn*, and *Exxon*. It was not. The inescapable conclusion is that each of these cases applies Epic's rule to reach Epic's desired result.

TCS implicitly acknowledges that its attempts to distinguish these cases do not hold up. It recognizes (at 33) that *Johansen* held "that post-judgment interest on a punitive damages award ran from the date of the initial entry of judgment ... despite a reexamination of that award on remand"—exactly the result Epic advocates here. TCS does not seriously dispute that adopting its interpretation of Section 1961(a) would create a circuit conflict, triggering Seventh Circuit Rule 40(e). *See* Epic Br. 42.[2]

This Court should reject TCS's request to depart from *Johansen* (and *Dunn* and *Exxon*). Each case correctly held that the vacatur and subsequent reduction of an excessive punitive-damages judgment did not undermine "[]either the evidentiary basis for the award [or its] legal foundation," *Exxon*, 568 F.3d at 1080, and ultimately resulted in the original award being "partially affirmed," *Johansen*, 170 F.3d at 1340. Interest under Section 1961(a) on that partially affirmed amount runs from the original judgment.

---

exactly what this Court did in *Epic I*. *See* 980 F.3d at 1145-46. And Epic's opening brief explained (at 45) why the second point is irrelevant: *Exxon* did not rely on the stipulation at all; instead, it faithfully applied *Kaiser* to deem damages "meaningfully ascertained" as of the original judgment. 568 F.3d at 1080.

[2] TCS asserts (at 33) that *Johansen* "contradicts the requirement in this Circuit that there be an authoritatively defined sum of money for interest to begin to accrue under Section 1961(a)." But no such "requirement in this Circuit" exists. *See* pp. 10-14, *infra*. As the district court recognized, this Court has never answered the question presented here. *See* A4. *Johansen*, by contrast, did.

## II.     TCS'S ARGUMENTS TO THE CONTRARY FAIL.

Having left most of Epic's textual and precedential arguments unrebutted, TCS's primary submission is that the Court should ignore them. TCS first advances and quickly abandons a test that is obviously waived and wrong. It then proposes an alternative. But this alternative is unmoored from either Section 1961(a)'s text or the cases interpreting it. Acknowledging that reality, TCS conjures an exception to its rule—but that exception does TCS no good either, because it requires ruling for Epic.

### A.     TCS's Two-Sentence Plain-Text Argument Is Waived and Wrong.

TCS begins with a false start. It suggests—briefly—that this is a simple case. According to TCS, "Epic does not seek post-judgment interest on the $280 million punitive damages award the district court entered on October 3, 2017, which was subsequently vacated," but rather on "the $140 million award the district court entered on July 12, 2022." TCS Br. 11-12. And so, TCS says, "post-judgment interest should be calculated from th[e latter] date." *Id.* The upshot seems to be that the relevant judgment under Section 1961(a) is always the last one.

But beyond those two sentences, TCS never defends that reading of Section 1961(a), instead pivoting to ask when "the punitive damages [here] were meaningfully ascertained." *Id.* at 9; *see id.* at 10, 19-21, 24-25, 38. TCS's "perfunctory two-sentence argument" is "waived." *United States v. Berkowitz*, 927 F.2d 1376, 1391 (7th Cir. 1991); *see Brockett v. Effingham Cnty.*, 116 F.4th 680, 686 (7th Cir. 2024) ("[A]rguments that are underdeveloped, cursory, and

lack supporting authority are waived.") (citation omitted)

TCS's decision not to press this reading seriously was wise: Section 1961(a)'s text and history forbid it, and no court has adopted it. *See* Epic Br. 19-35. Indeed, if TCS's interpretation were correct and the only question under Section 1961(a) was which judgment came last, it would mean that decades of cases asking when damages were "meaningfully ascertained"— including *Kaiser*—fundamentally misapprehended the statute. And it would contravene the entire line of cases allowing post-judgment interest to accrue from earlier, since-vacated judgments. *See* Epic Br. 26-27 (collecting cases). The argument is a nonstarter.

### B. TCS's "Authoritatively Defined Sum Certain" Test Is Unsupported by Section 1961(a)'s Text and the Relevant Case Law, and It Requires Ruling for Epic in Any Event.

Moving on from that indefensible categorical rule, TCS proposes a new standard: post-judgment interest accrues from the judgment "[a]uthoritatively [d]efining the [s]um [s]ubject to [e]xecution." TCS Br. 11; *see id.* at 11-17. On its face, this test, too, cannot be reconciled with the decades' worth of cases asking when damages were meaningfully ascertained. *See* Epic Br. 26-35.

Nor does TCS's new test withstand deeper scrutiny. TCS derives the test's first prong—that the judgment must contain a "sum certain"—from cases that did not present the issue here, and the October 2017 judgment satisfies this requirement in any event. And TCS derives the second prong—that the sum be "authoritatively defined"—from a statement in this Court's decision in *Harris* that no court of appeals, including this one in subsequent years, has ever applied in

the way TCS proposes.  Acknowledging that reality, TCS's test includes a carveout permitting post-judgment interest to accrue from an earlier judgment if the true amount of damages "is fixed and unalterable, even though the calculation that will reveal it has yet to take place."  TCS Br. 14.  But applying that exception in this case requires ruling for Epic.

### 1.  Nothing in This Case Turns on TCS's Observation That a "Money Judgment" Must State a "Sum Certain."

TCS first argues (at 12-16) that a "money judgment" must be for a "sum certain."  The import of this argument is unclear, as both the October 2017 and July 2022 judgments *were* for sums certain, and TCS cannot argue otherwise.  The question here is not whether the October 2017 judgment was *a* "money judgment"—it surely was—but rather whether it is *the* "money judgment … recovered in a district court" to which Section 1961(a) refers.  On this crucial question, TCS's cases—all of which ask only what counts as a money judgment in the first place—have nothing to say.

In *United States EEOC v. Gurnee Inns, Inc.*, the defendant argued that a back-pay judgment was not a "money judgment" in part because the defendant was permitted to deduct payroll taxes (in amounts to be calculated later) before paying the awards.  956 F.2d 146, 149 (7th Cir. 1992).  In rejecting this argument as frivolous, this Court recounted the defendant's position that Section 1961(a) "allows interest only on 'money judgments' in a sum certain" and held that, even were it so, "the awards did not lose their character as sums certain simply because they were subject to the mechanical task of computing the payroll deductions."  *Id.*  Thus, *Gurnee Inns* stands for the uncontroversial proposition,

with which Epic agrees, that a money judgment is one "direct[ing] 'the payment of a sum of money.'" Epic Br. 22 (quoting Black's IV at 980). But *Gurnee Inns* does not articulate a requirement that helps resolve the question presented here: From which judgment, as between *two* directing the payment of money (each for a "sum certain"), does post-judgment interest accrue?

*In re Burlington Northern, Inc. Employment Practices Litigation*, 810 F.2d 601 (7th Cir. 1986), is also inapposite. That case asked whether post-judgment interest ran from the date of the parties' consent decree or the later date on which judgment was actually entered in the case. *Id.* at 608-09. This Court sensibly held that post-judgment interest under Section 1961(a) cannot accrue before any judgment is entered. *Id.* But neither party here is in favor of running post-judgment interest from a date before any judgment was entered; Epic contends that interest runs from the entry of the original judgment in 2017, not any date before that.[3]

The same is true of TCS's final case, *Sterling National Bank v. Block*, No. 16-cv-9009, 2019 WL 5085715 (N.D. Ill. Oct. 10, 2019). There, the district court entered partial judgment as to liability only, leaving the question of "the appropriate remedy or damages" for later. *Id.* at *1. Because this liability-only judgment did not direct the payment of money, *see* Black's IV at 980, it was not a "money judgment" under Section 1961(a). *See Sterling*, 2019 WL 5085715, at

---

[3] For this reason, TCS's discussion (at 21-22) of *Kaiser*'s holding that post-judgment interest runs from the date of the judgment rather than the date of the verdict is irrelevant.

*6.  This case, too, has nothing to do with the issue presented here.[4]

TCS says it is "[t]elling[]" that "Epic ignore[d] most of these precedents" in its opening brief.  TCS Br. 16.  Epic ignored these precedents because they are irrelevant, as further evidenced by the fact that TCS did not cite them below.  *See* R.1062.  What *is* telling is that TCS, with no on-point case law on its side of the ledger, headlines its argument with a lengthy discussion of an issue on which nothing in this case turns.  Both the October 2017 judgment and the July 2022 amended judgment were money judgments for sums certain in Epic's favor.  This Court's task is to determine which of those judgments counts for purposes of Section 1961(a).  None of TCS's cases assist in answering that question.

### 2. *Harris*'s "Authoritatively Defined" Language Does Not Differ From the "Meaningfully Ascertained" Test Adopted by Other Courts.

With no support from its "sum certain" discussion, TCS's test boils down to this Court's one-off observation in *Harris v. Chicago Great Western Railway Co.* that interest would run from the entry of judgment on remand where "neither the amount due for fees nor the due date of the obligation was authoritatively defined" until this Court corrected the district court's errors on appeal.  197 F.2d 829, 836 (7th Cir. 1952).  That statement cannot carry the day.

At the outset, TCS never explains how, if at all, this "authoritatively defined" test differs from the "meaningfully ascertained" standard adopted by

---

[4] The out-of-circuit cases TCS identifies in a footnote, *see* TCS Br. 13-14 n.4 (collecting cases), are inapposite for the same reasons.

other courts.  It is not clear that it does.  Indeed, earlier in the very same paragraph in which *Harris* used the cited language, it alternatively phrased the relevant question in terms of when the award of attorneys' fees was "ascertained."  *Id.*  Nor has TCS identified any cases adopting its "authoritatively defined" test, much less any giving that test substance or indicating how it would apply on the facts here.  In any event, to the extent that *Harris* articulated some sort of heightened standard under Section 1961(a), that standard could not survive the Supreme Court's holding in *Kaiser* that the operative question is when the damages are "'ascertained' in any meaningful way."  494 U.S. at 835-36.  The cases interpreting and applying *that* standard set out the rule of decision in this case, and they uniformly hold that when a punitive-damages judgment is vacated as excessive and subsequently reduced, post-judgment interest runs from the original judgment.  *See* Epic Br. 26-31.

### 3.   *Kaiser*, *Harris,* and *Divane II* All Support Epic's Position.

TCS ultimately retreats to defending the judgment below largely on the district court's own terms, arguing that this Court's decisions in *Harris* and *Divane II*—plus the Supreme Court's decision in *Kaiser*—show that the damages here were not "meaningfully ascertained" until the entry of judgment on remand.  *See* TCS Br. 17-21, 25-28.  But as Epic has explained, none of those cases support—much less require—the district court's conclusion.

**Kaiser.**  TCS cites *Kaiser* to refute a straw-man version of Epic's argument, under which post-judgment interest begins to accrue whenever the plaintiff establishes the defendant's liability, such that the plaintiff may be

14

entitled to collect an unspecified amount of damages sometime in the future. TCS Br. 17-20. That is not Epic's argument. Rather, under Section 1961(a), post-judgment interest accrues once the legal and evidentiary bases for the *actual* damages the plaintiff ultimately receives are established and enshrined in a judgment—even if the amount of damages is subsequently reduced. That standard was not satisfied in *Kaiser*, where the district court ordered a new trial on damages—with new evidence, before a new jury. *See Bonjorno v. Kaiser Aluminum & Chem. Corp.*, No. 74-cv-122, 1988 WL 35879, at *1 (E.D. Pa. Apr. 12, 1988). But it *is* satisfied here, where "the ... jury's decision was never overturned and the matter [of damages] was never retried." *Dunn*, 13 F.3d at 61. Thus, in TCS's words, the "*amount of damages* owed" *was* "ascertained from the evidence" presented to the jury here. TCS Br. 19-20. Indeed, it could not be otherwise, since no new evidence was taken, and no new jury empaneled.

**Harris.** This Court's holding in *Harris* is likewise entirely consistent with Epic's position. There, this Court explained that, in awarding $500,000 in attorneys' fees, the district court made "immaterial and irrelevant findings upon issues not presented" that "entered into the court's disposition," resulting in error. 197 F.2d at 833, 836. Critically, because the Court could not determine "[h]ow far the [district] court's judgment may have been affected or influenced" by those errors, it could not be sure that *any* of the fees contained in the first award were "reasonable." *Id.* at 833-34. It therefore undertook its own "mature consideration" of the record to "determine[]," in the first instance, "what was 'reasonable,'" and arrived at a figure of $350,000. *Id.* at 836.

TCS claims (at 26) that "Epic fails to explain why post-judgment interest did not run from the original judgment" in *Harris*, asserting that "the $350,000 had both a firm legal and evidentiary basis." But while this Court was able to derive that $350,000 figure from the record below, there is no sense in which that $350,000 was embodied *in the district court's original judgment*. That judgment, this Court explained, was "interwoven with erroneous conceptions" of both fact and law that made it "impossible to say" to what degree, if at all, the award contained therein was valid. *Harris*, 197 F.2d at 833-35. Thus, in *Harris* as in *Kaiser*, no "matters embraced in the [original judgment]" were "incorporated into the new" judgment. *Kneeland II*, 138 U.S. at 511-12. Here, by contrast, it is not "impossible to say" how much of the original judgment is "incorporated into" the amended judgment. We know for certain: $140 million.

**Divane II.** *Divane v. Krull Electric Co. (Divane II)*, 319 F.3d 307 (7th Cir. 2003), likewise supports Epic's position.

First, TCS is incorrect to suggest (at 27) that under Epic's view of the world, interest should have accrued from the earlier judgment in that case. In *Divane I*, this Court held that the movant had not carried its burden on a necessary element of its claim, so this Court remanded for the district court to make new factual findings on that front, which it did. *See* Epic Br. 32-33. That procedure amounted to a retrial on damages, since (as in *Harris*) the appropriate fee award was for the court, rather than a jury, to decide. Thus, because the original judgment both "lack[ed] a legal basis [and] require[d] further factual development," *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996), no part of the

16

award contained in the first judgment can be said to have been incorporated into the new judgment. None of that is true here: The award of punitive damages was committed to the jury, not the court, and the jury heard this case only once.[5]

Moreover, TCS relegates to a footnote the critical second half of *Divane II*'s holding—that interest ran on the second judgment despite this Court's further reduction of that judgment. *See* TCS Br. 28 n.5. TCS explains away this result by reference to the exception it has carved out from its "authoritatively defined" test, *id.*—that interest may accrue from an earlier, subsequently reduced judgment if the correct amount of damages "is fixed and unalterable, even though the calculation that will reveal it has yet to take place," *id.* at 14.[6]

Epic does not disagree that *Divane II*'s second holding could be justified on those terms. That is because TCS's "exception" is just a restatement of the rule announced in *Kneeland II* and applied in *Johansen*—that where the

---

[5] TCS's reliance on *Kelly v. Secretary, United States Department of Housing and Urban Development*, 97 F.3d 118 (6th Cir. 1996), fails for the same reason. There, the Sixth Circuit ordered an administrative law judge (ALJ) to make new factfindings on the issue of damages. *Id.* at 120. When the ALJ failed to do so, the Sixth Circuit itself made new findings to "ascertain[] the proper damage award" in the second appeal. *Id.* Under the logic of *Kaiser*, *Harris*, and *Divane II*, post-judgment interest could not accrue until the entry of judgment following that new determination.

[6] TCS alternatively phrases its exception as applying where the ultimate amount of damages is "reveal[ed] through mechanical calculation," TCS Br. 14, a formulation derived from *Gurnee Inns*. As explained, *see* pp. 11-12, *supra*, *Gurnee Inns* sheds no light on the issue presented here, and does not support either TCS's rule or an exception to it. In any event, this exception finds no support in the case law: Many of the cases running post-judgment interest from earlier judgments cannot be described as involving mechanical calculations. *See* pp. 6-8*, supra* (discussing *Johansen*, *Dunn*, and *Exxon*).

"substance" of the proceedings, *Kneeland II*, 138 U.S. at 511-12, reveals that the district court's original judgment was "correct" to a certain, identifiable extent, *Johansen*, 170 F.3d at 1340, and where that identifiable amount "embraced in the [original judgment]" is "incorporated into the new," *Kneeland II*, 138 U.S. at 511, interest runs from the date of the earlier judgment.  If TCS agrees with Epic on this point, there is little dispute left in this case.

### 4.    This Case Falls Within the Exception to TCS's Rule.

TCS's exception applies with full force here.  *Epic I*'s application of the *Gore* factors "reveal[ed]" that, under the Due Process Clause, punitive damages could not exceed the "fixed and unalterable" sum of $140 million.  TCS Br. 14.  And even if the district court retained authority to reduce the award further—which it did not, *see* pp. 18-22, *infra*—whatever amount remained would likewise have been "reveal[ed]" by application of law.   In the end, a certain, "fixed and unalterable" portion of the jury's damages award—$140 million—was "reveal[ed]" to be legally permissible.   Because that fixed and unalterable $140 million was "embraced in the [October 2017 judgment]" and "incorporated into the [July 2022 amended judgment]," *Kneeland II*, 138 U.S. at 511, post-judgment interest accrues from the earlier judgment—both under an unbroken line of precedents from across the circuits, and under TCS's own test.

### III.   TCS MISAPPREHENDS THE NATURE AND SIGNIFICANCE OF THE VACATUR.

TCS has one final response.  The exception just discussed does not apply, TCS says, because the true amount of damages here was not "fixed and unalterable," but rather subject to the district court's "discretion" on remand.

TCS Br. 14; *see id.* at 10, 12, 34, 38.  This is so, TCS says, because *Epic I* remanded for the district court to "determine an appropriate amount of punitive damages anew" by applying certain "non-constitutional principles [identified in *Epic I*] in the first instance." *Id.* at 6; *see id.* at 1-2, 8, 10-11, 29, 33-34.  But TCS never explains what these "non-constitutional principles" are or why applying them here would not have resulted in the partial affirmance of a "fixed and unalterable" portion of the original punitive-damages award, *id.* at 14, such that interest would run from the original judgment even under TCS's own test.

In any event, *Epic I* did not give the district court carte blanche to reduce the award in its "discretion"; this Court never even used that word when discussing punitive damages.  *Epic I*'s observation that federal courts may have power to "reduce a punitive-damages award sometime before it reaches the outermost limits of due process," 980 F.3d at 1140 (quoting *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019)), does not mean such power is not subject to, and limited by, ordinary principles of federal procedure.  *Saccameno*—the case this Court relied upon—illustrates Epic's point.  There, the appellant, like TCS here, argued that a punitive-damages award "exceed[ed] constitutional limits." 943 F.3d at 1085.  In that context, *Saccameno* "remind[ed] litigants … that the Constitution is not the most relevant limit to a federal court when assessing punitive damages." *Id.* at 1085-86.  Even so, because the appellant made only constitutional arguments, this Court "address[ed] its arguments" only "on those terms." *Id.*; *see, e.g., Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 727 (7th Cir. 2021) ("[U]nder the principle of party presentation,

courts generally do not craft new arguments for a party, especially in civil cases … when the party is represented by counsel."). So *Saccameno*'s "remind[er]" to litigants was really just that—a *reminder*.

TCS did not heed that reminder. It admits (at 31) that, if any nonconstitutional principles existed for further reducing the award on remand from *Epic I*, those arguments were "not previously addressed by the district court." That is because TCS never made such arguments, either in its post-trial briefing in the district court, *see* R.914, R.1040, or on appeal in *Epic I*, where TCS argued only that the punitive-damages award exceeded the "substantive limits" that "[t]he Due Process Clause" and "substantively identical" Wisconsin law "impose[d]." *Epic I* Dkt. 19 at 63-64 (TCS Opening Br.) (citation omitted). Accordingly, in *Epic I* as in *Saccameno*, the Court decided only the question TCS put before it: whether "the punitive-damages award [was] *constitutionally* excessive." 980 F.3d at 1137 (emphasis added); *see id.* at 1140.

Because TCS's failure to invoke any nonconstitutional bases for further reducing the punitive-damages award meant it waived those arguments on appeal, after *Epic I* it was the law of the case that the Constitution provided the only valid basis for reducing the jury's award. *See Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 896 (7th Cir. 2023) ("[W]aiver shapes the law of the case and the scope of any remand."); *see also Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011); *Morris v. Am. Nat'l Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993). And it was also the law of the case that the reduced award of $140 million *was* constitutional. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd. (Epic II)*, 2023

20

WL 4542011, at *3 (7th Cir. July 14, 2023) ("[*Epic I*] already determined that a $140 million award would be constitutional here.").

Against that backdrop, the district court correctly concluded that, when *Epic I* ordered it to "reduce the punitive-damages award consistent with the analysis in [*Epic I*]," 980 F.3d at 1146, its sole task was to "decide on remand whether a twice reduced award of $140 million is *still constitutionally infirm.*" R.1045 at 7 (emphasis added). The district court's analysis shows it did just that. Rejecting TCS's invitation to "writ[e] on a clean slate," the court explained that "all of [TCS's] remaining arguments for a reduction below the constitutional cap … amount to arguments one might make to a jury"—which it could not consider. *Id.* at 3, 7.[7] Finding that TCS's arguments were "largely unmoored from the *constitutional* considerations articulated … in *Gore* and already applied [in *Epic I*]," the court held that it had "no principled, *constitutional* basis for a further reduction" in the punitive-damages award. *Id.* at 7 (emphases added).[8]

---

[7] TCS asserts (at 6) that "Epic introduced new evidence … from after the trial" as to TCS's culpability. True, Epic attached exhibits to its brief on remand from *Epic I*, but only as an alternative response showing that TCS's new "claim of repentance [was] undermined by its own public statements" after trial. R.1041 at 14. But just a page earlier, Epic argued that the court lacked authority to "reject the jury's verdict" and reduce damages based on conduct occurring "after the entry of the judgment." *Id.* at 13. The district court rightly agreed. *See* R.1045 at 7.

[8] TCS did not ask the district court on remand from *Epic I* to offer Epic the option of accepting either a remittitur or a new damages trial. *See generally* R.1040. Instead, it asked the court to "impose" a reduced punitive-damages award as a matter of law. *Id.* at 19. TCS could not have sought a remittitur because it did not preserve that argument in *Epic I*, so it was also the law of the case that the district court soundly exercised its discretion in not granting a remittitur

*Epic II* confirms that the district court correctly understood its assignment. Reviewing the "district court's determination of the scope of [the] remand de novo," this Court affirmed the district court's holding that the "$140 million punitive damages award" was (1) "constitutional" and (2) "justified under Wisconsin law," 2023 WL 4542011, at *2-3—precisely the same conclusions this Court already reached in *Epic I*.   So when the district court entered its $140 million amended judgment on remand, that $140 million was "embraced in" the original judgment and "*pro tanto* … affirm[ed]" by this Court in *Epic I*. *Kneeland II*, 138 U.S. at 511-12.  Post-judgment interest therefore runs from the date of the original judgment.

## IV. THIS COURT SHOULD REJECT TCS'S REQUEST FOR A WINDFALL.

Finally, TCS argues (at 23) that it would be unjust to run post-judgment interest from the original judgment because TCS was not "recalcitrant" in paying the punitive-damages award.  This final argument fails, too.  No doubt deterring recalcitrance is *one* purpose of Section 1961(a), but it is not its *only* purpose, or its most important.  That much is clear from the fact that, under Section 1961(a), interest accrues during the pendency of subsequent proceedings, including appeals attacking the validity of the judgment and petitions for certiorari, even when the losing defendant is pursuing its appellate rights in good faith.

Instead, Section 1961(a)'s animating purpose is as *Kaiser* describes it: "to compensate *the successful plaintiff* for … the loss from the time between the

---

initially.  In any event, TCS apparently concedes that remittiturs do not reset the post-judgment interest clock.  *See* pp. 6-7, *supra* (discussing *Dunn*).

ascertainment of the damage and the payment by the defendant." 494 U.S. at 835-36 (emphasis added) (citation omitted).  A money judgment recognizing Epic's status as the "successful plaintiff" was entered in October 2017, and TCS paid the punitive damages in December 2023.  Throughout that entire period, although TCS was the "adjudicated wrongdoer," *Merit II*, 728 F.2d at 945, TCS retained the use and enjoyment of Epic's punitive-damages award, thereby profiting to the tune of hundreds of millions of dollars, *see* Epic Br. 47—a point TCS notably does not dispute.  Section 1961(a) does not care whether the six-year delay here was the defendant's fault or the result of an act of God.  It cares only that, though the money was rightfully Epic's all along, Epic did not have it.

TCS implies (at 23-24) that Epic is wrong to rely on *Merit II*'s "adjudicated wrongdoer" language, seeking to distinguish that case on its facts.  That case is as good a place to end as any.  The district court there initially entered judgment for Merit, but vacated the judgment on reconsideration and entered a new judgment in Leatherby's favor, from which Merit appealed.  *See Merit II*, 728 F.2d at 944.  In the initial appeal, this Court reversed and "remanded with directions [for the district court] to reinstate the previous judgment" in Merit's favor, *Merit Ins. Co. v. Leatherby Ins. Co.* (*Merit I*), 714 F.2d 673, 683 (7th Cir. 1983), which it did, *see Merit II*, 728 F.2d at 944.  This Court held in *Merit II* that post-judgment interest ran from the initial judgment, even though it had been vacated for nearly a year prior to *Merit I*—during which another judgment, in Leatherby's favor, was in effect.  *See id.* at 945.  This Court explained that result by deeming it "more just" that Merit, "whose position on the merits [was] vindicated," should

23

"receive interest for the entire post-judgment period than that Leatherby"—"the adjudicated wrongdoer"—"be allowed for even part of this period to enjoy, interest free, money that rightfully belonged to Merit." *Id.*

TCS says (at 24) this case is different because this Court "fully reinstated the original judgment" in *Merit I*. But the result in *Merit II* is impossible to reconcile with TCS's view that Section 1961(a) exists only to punish defendants who are recalcitrant in paying their judgments, or with TCS's view that a vacatur always restarts the clock for purposes of post-judgment interest. Instead, *Merit II* squarely supports Epic's position—because in the end, what happened in *Merit II* is what happened here: the district court's original judgment was "reinstated," 728 F.2d at 944, to the extent of $140 million.

Here—as in *Johansen*, *Dunn*, and *Exxon*—"the … jury's decision was never overturned and the matter was never retried." *Dunn*, 13 F.3d at 61. Instead, *Epic I* merely concluded that the jury's punitive-damages award—its "expression of … moral condemnation," *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001), at TCS's "repeated and brazen misconduct," *Epic II*, 2023 WL 4542011, at *3—went too far. This Court thus remanded for the district court to "*amend* its judgment and *reduce* punitive damages to, at most, $140 million." *Epic I*, 980 F.3d at 1145 (emphases added). Put differently, the Court "ordered" the lawful portion of the jury's original punitive-damages award "embraced in the [first judgment] … incorporated into the new." *Kneeland II*, 138 U.S. at 511. When the district court followed that order and entered its amended final judgment for $140 million, it necessarily "reinstated" the original judgment

to that extent.  *Merit II*, 728 F.2d at 944; *see* R.1045 at 8 (explaining that, but for the reduction in damages, "the court's original, final judgment remains unchanged").  Under Section 1961(a), post-judgment interest on that reinstated $140 million accrues from the date the district court entered the judgment first recognizing Epic's entitlement to it—October 3, 2017.

## CONCLUSION

This Court should reverse the district court's judgment and remand with instructions to award Epic post-judgment interest from October 3, 2017.

Respectfully submitted,

EPIC SYSTEMS CORPORATION

By /s/Kathryn L. Wynbrandt
      One of Its Attorneys

Michael T. Brody
  *Counsel of Record*
Simon A. de Carvalho
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
mbrody@jenner.com
sdecarvalho@jenner.com

Kathryn L. Wynbrandt
JENNER & BLOCK LLP
1099 New York Avenue NW
  Suite 900
Washington, DC 20001
(202) 639-6000
kwynbrandt@jenner.com

Kristin G. Noel
QUARLES & BRADY LLP
33 East Main Street
Madison, WI 53703
(608) 251-5000
kristin.noel@quarles.com

*Attorneys for Plaintiff-Appellant Epic Systems Corporation*

Dated:  April 4, 2025

25

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because, according to the word count function of Microsoft Office Word 365, this brief contains 6,955 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 12 point Bookman Old Style for the main text and footnotes.

Dated:  April 4, 2025

/s/ Kathryn L. Wynbrandt
Kathryn L. Wynbrandt

**CERTIFICATE OF SERVICE**

I, Kathryn L. Wynbrandt, an attorney, hereby certify that on April 4, 2025, I caused the **Reply Brief Of Plaintiff-Appellant Epic Systems Corporation** to be electronically filed with the Clerk of the Court for the United States Court Of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the above named brief to be transmitted to the Court via UPS overnight delivery, delivery charge prepaid, within five days of that date.


/s/Kathryn L. Wynbrandt
Kathryn L. Wynbrandt